MONROE COUNTY.—HON. J. A. ADLINGTON, SURRO-
GATE.—May, 1887.

WORDEN *v.* VAN GIESON.

*In the matter of the application for probate of a pa-
per propounded as the will of* ELLEN VAN GIESON,
*deceased.*

The paper propounded as decedent's will, and which purported to have
  been executed by making a cross-mark, was accompanied by a full
  attestation clause, and was witnessed by the draftsman, since deceased,
  and another whose memory, as to the circumstances attending the
  publication, was a blank. No other evidence being adduced to show
  the making of the mark by decedent,—

*Held,* that probate must be refused, for lack of proof.

*It seems,* that proof of the making of such mark by decedent would have
  been "proof of the handwriting of the testator," within the meaning
  of Code Civ. Pro., § 2620.

Matter of Reynolds, 4 *Dem.,* 68—followed.

Matter of Walsh, 1 *Tucker,* 132—criticized.

PETITION for the probate of will. The facts are
fully stated in the opinion.

P. B. HALLET, *for proponents.*

JOHN DESMOND, *for contestants.*

THE SURROGATE.—This is a proceeding for the pro-
bate of an instrument purporting to be the last will
and testament of the above-named decedent, pro-
pounded by Gilbert Van Gieson and Ellen Jane Van
Gieson, who are named as executors in the said instru-
ment. The probate is opposed by Martha Worden and

Mary Vansice, daughters of the decedent, on the ground that said alleged will was not executed according to law.

The alleged will is dated May 5th, 1875, and appears to be signed at the end by the decedent by mark, in this wise:

Witness to mark,
V. M. Smith.

her
Ellen + Van Gieson.
mark

There follows a full attestation clause, reciting the observance of all the statutory forms in the execution of the instrument, and this clause is subscribed by Leman S. Wolcott and Vincent M. Smith as attesting witnesses.

Mr. Smith was an attorney of good reputation and long experience, and the written portion of the will is in his handwriting. He superintended the execution of this instrument, and it is probable that his testimony, if he were alive, would fully establish the due and formal execution of this will in every particular. Mr. Smith, however, died before Mrs. Van Gieson, and the only person now living, who can give any testimony on the subject of the execution of this instrument, is the other subscribing witness, Leman S. Wolcott. The transaction took place twelve years ago, Mr. Wolcott is now sixty-seven years of age, and is one of those unfortunate persons afflicted, either with a seriously defective memory, or a strong inclination to appear of that condition; and it is difficult to tell from his testimony what did occur at the time of the execution of the alleged will. There is a strong presumption that this instrument was properly executed, arising from

the fact that a lawyer thoroughly familiar with the statutory requirements superintended the proceedings, and from the further fact that there is a full attestation clause signed by the attesting witnesses, which clause was probably read aloud by Mr. Smith in the hearing of Mrs. Van Gieson and Mr. Walcott, just before it was signed by the two men as attesting witnesses (Peck v. Cary, 27 *N. Y.*, 9 ; Matter of Cottrell, 95 *N. Y.*, 339 ; Brown v. Clark, 77 *N. Y.*, 369 ; Radley v. Kuhn, 28 *Hun*, 577).

Notwithstanding this presumption in favor of the alleged will, there seems to be an insuperable statutory difficulty in the way of its probate, aside from the uncertainty as to the facts. Section 2618 of the Code of Civil Procedure, requires the examination of at least *two* of the subscribing witnesses before the admission of a written will to probate, if so many are within the State and competent to testify. When death, absence from the State, lunacy, or other incompetency, has been shown, § 2620 then permits the will to be established upon proof of the *handwriting* of the testator, *and* of the subscribing witnesses, *and also* of such other circumstances as would be sufficient to prove the will upon the trial of an action.

Under the provisions of the last mentioned section, there would usually be little difficulty in establishing the due execution of a will which had been signed by the testator in his own handwriting, and attested by the subscribing witnesses, in like manner. In case of the death or forgetfulness of the witnesses, persons could readily be found, familiar with the signature of the testator and the attesting witnesses, and by whom

such signature can be proved; or resort could be had to comparison of the handwriting with other specimens known to be genuine. When, however, the testator has signed by mark and one or more of the subscribing witnesses are dead, or have forgotten the occurrence, serious difficulty arises, on attempting to probate the alleged will, from the fact that a mark has no distinctive character and does not permit of identification.

If other persons than the subscribing witnesses were present at the execution of the instrument, and actually saw the decedent make his mark, and can remember and testify to the fact upon the trial, the will may still be saved; but, under the circumstances of the present case, I do not see but that I am compelled, by the statutes above referred to, to deny probate to this instrument. Similar decisions have been made by other Surrogates (Matter of Reynolds, 4 *Dem.*, 68; Matter of Walsh, 1 *Tuck.*, 132). While the latter case was correctly decided on the proofs before the learned Surrogate, and is very like the present one, yet I do not approve of the doctrine of the opinion that " a will subscribed by a mark . . . . cannot be proven at all, if one of the witnesses cannot be produced." I have stated above that, in my opinion, probate may be had if other persons, who were present, can testify to seeing the mark made, and the other circumstances attending the execution can be established. In this position I am confirmed by the decision in Matter of Simpson (2 *Redf.*, 29).

While therefore, the due execution of this instrument is probable, I am constrained by lack of legal

proof to deny its probate.    Decree may be entered on two days' notice.