MARSHALL, Respondent, vs. WITTIG, Appellant.

*November 10—December 5, 1933.*

The cause was submitted for the appellant on the brief of *Russell & Buckley* of Hartford, and for the respondent on that of *Gilbert, Ela, Heilman & Raeder* of Madison.

FAIRCHILD, J.   There can be no doubt but that the appellant entered into the contract set forth in the statement of facts.   That this agreement was plain and free from ambiguity is certain.   That the appellant became a stockholder in the company when he paid his $700 and gave his note for the balance of the purchase price is equally certain.   By subscribing for stock he took upon himself the obligation to pay for it, and because of that liability he is now bound to pay the balance due on his stock subscription as evidenced by the note sued upon.

Appellant complains because he was not permitted to offer evidence tending to show why the certificate of stock was not delivered to him.   He sought to dispute the written agreement by claiming that he was not the owner and that

therefore the corporation had no right to credit liquidating dividends on the note. But the parties had deliberately put their arrangement for the acquiring of the stock by appellant in writing, and it appears to be in such terms as to import a legal obligation "without any uncertainty as to the object or extent of such engagement." The language in the agreement is such as to warrant the conclusive presumption that the whole engagement of the parties and the extent and manner of their undertaking is expressed in the language of the agreement. The ruling of the trial court excluding testimony tending to vary or contradict the writing must be sustained. 3 Jones, Comm. on Evidence (2d ed.) §§ 1482, 1483; 1 Greenleaf, Evidence, § 275.

The contention on the part of the appellant that the claim had outlawed before the beginning of the action is likewise without merit. The undisputed evidence shows that by letter dated April 28, 1924, the appellant was duly advised of the steps being taken in the liquidation proceedings. He was told that his note was in an attorney's hands for collection and he replied in a letter May 1, 1924, written by his daughter but with his knowledge, saying among other things:

"Why the Wisconsin Live Stock Insurance Company wants further payments on the balance due on our note of $1,361.12, as the company has decided to liquidate its affairs, at the meeting. They expected that they could pay from sixty to seventy cents on a dollar; as to our twenty shares or twenty-five hundred dollars stock with the company, if the company could only pay fifty-five cents on a dollar this would more than cover the balance on the note. I don't understand why we should advance any more money. I will be willing to settle with the company as soon as the company can make a correct statement of what per cent. they can pay on the dollar. If it should be the case that our money with the company wouldn't cover it, that is if the company was to pay less than fifty-five cents on a dollar, I would be willing to pay whatever it would be. Hoping this will be satisfactory to you and the company, . . ."

We hold that under the circumstances the appellant was entitled to the benefit of the indorsements made upon the note, that they were consistent with the terms of the agreement, and that the letter just referred to bound him so effectively·that the statute of limitations did not run against the note. *Hughes v. Thomas,* 131 Wis. 315, 111 N. W. 474; *McLean v. McLean,* 184 Wis. 495, 199 N. W. 459; sec. 330.42, Stats.

At the close of the evidence, when the motion for a directed verdict was made, the facts committing the appellant to the payment of the note appeared from the agreement and from the correspondence. Ownership of the stock by appellant was established. There was undisputed evidence from which the only inference to be drawn is that the appellant had appointed proxies to vote his stock, and that he had attempted to negotiate a sale of it. The mere fact that he had not paid for it in full did not destroy his ownership thereof. The certificate of stock was issued but withheld by the company and was not to be delivered until paid for. Under the provision of sec. 180.06 (3) of the Wisconsin Statutes, a corporation cannot transact business with others than its members until one-half of its capital stock has been subscribed and one-fifth of it actually paid in. The practice of buying stock authorized by this plan contemplates the acquirement of stock by some of the stockholders on a deferred-payment basis. See, also, sec. 182.06, Stats., and *First Nat. Bank v. Hizer,* 189 Wis. 359, 207 N. W. 688. We are of the opinion that the contentions of the appellant that he did not have title to the stock and that the debt is outlawed are untenable.

Appellant urges that because of the words in the note agreeing "to release right of appeal," the contract is contrary to public policy and not enforceable. These words add very little, if anything, to the power the signer of the note gave by his authorization to confess judgment for the amount thereof. The authorization goes as far without

the words objected to as it does with them in the instrument, but if serious fault exists because of their use they are so circumstanced that they are severable and may be ignored. The cases relied upon by the appellant, *Wight v. Rindskopf,* 43 Wis. 344; *Lowe v. Crocker,* 154 Wis. 497, 143 N. W. 176, and *Rock v. Ekern,* 162 Wis. 291, 156 N. W. 197, do not support his claim that the whole of this agreement is void. They recognize the general rule that contracts repugnant to justice or founded on an immoral consideration, or which are against the general policy of the law, are void. Judgment notes, however, have been accepted as legal contracts entitled to full force and effect, and the only stipulation in this one that is subject to question does not interfere with appellant's exercising his full right to protect his interests if violated. In no event can the words complained of have the effect insisted upon of rendering the note void in the absence of fraud or some undue advantage taken of the appellant, for there would still remain a lawful contract with valid and legal covenants to be enforced. In 3 Williston on Contracts, sec. 1779, it is said: "When some covenants of an indenture are legal and others illegal, the legal covenants may be enforced." In a contract containing a questionable provision which may be destroyed without defeating the primary purpose of the bargain, and where there is an absence of moral turpitude, a recovery would still be allowed. Restatement of the Law of Contracts, sec. 603; *Zaremba v. International Harvester Co.* 162 Wis. 231, 155 N. W. 114. The appellant has been in no way deprived of any right. Under the evidence no issue existed necessitating a submission of any question to the jury. It appearing that the statute of limitations was tolled by acknowledgment of the indebtedness and by payments upon the note made with the authority of the appellant, and that no error was committed in the rulings upon the admission of evidence, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.